# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| R. RUDNICK & CO., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 08 C 1856 |
| v. ) | |
| ) | Judge Joan B. Gottschall |
| G.F. PROTECTION, INC., et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff R. Rudnick & Co. ("Rudnick") has filed suit against G.F. Protection, Inc. and ten John Does (collectively "GFP"), alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"); the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1, *et seq.* ("ICFA"); and the common-law tort of conversion. Rudnick's complaint stems from allegations that GFP engaged in the sending of unsolicited advertisement facsimiles ("faxes") to Rudnick and at least 40 other citizens of Illinois. GFP moves to dismiss the ICFA and conversion claims.

In reviewing a motion to dismiss based on Rule 12(b)(6), the court is to construe the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts, and drawing all possible inferences in the plaintiff's favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

**I.   ICFA Claim**

To prevail under the ICFA, a party must ultimately show (1) an unfair or deceptive act or practice by defendant, (2) defendant's intent that plaintiff rely on or be treated unfairly by the act or practice, and (3) that the deception occurred in the course of conduct involving trade and commerce.

815 Ill. Comp. Stat. 505/2; *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 593 (Ill. 1996). A practice need not be both unfair *and* deceptive; an otherwise unfair practice need not also be deceptive to be cognizable under the ICFA. *See Sperry*, 405 U.S. 244 n.5 (discussing claim that was "[not] deceptive [but] nevertheless unfair"); *Elder v. Coronet Ins. Co.*, 558 N.E.2d 1312, 1316 (Ill. App. Ct. 1990) (discussing *Sperry*, 405 U.S. 233, and *People ex rel. Fahner v. Hedrich*, 438 N.E.2d 924 (Ill. App. Ct. 1982)). Whether a practice is "unfair" is determined by considering three factors: a) whether the practice offends public policy; b) whether it is immoral, unethical, oppressive, or unscrupulous; and c) whether it causes substantial injury to consumers. *Robinson v. Toyota Motor Credit Corp*, 775 N.E.2d 951 (Ill. 2002). "All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Id.* at 961 (quotation omitted). GFP contends that the sending of unsolicited faxes does not constitute an unfair practice as understood under the ICFA. The court disagrees.

The practice of sending unsolicited advertisement faxes is generally prohibited under the TCPA, 47 U.S.C. § 227(b)(1)(C), and is a misdemeanor criminal offense under Illinois law. 720 Ill. Comp. Stat. 5/26-3(b). These federal and state statutes are evidence that the sending of unsolicited advertisement facsimiles is counter to public policy. *See FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244–45 n.5 (1972); *see also Centerline Equip. Corp. v. Banner Pers. Serv., Inc.*, 545 F. Supp. 2d 768, 780 (N.D. Ill. 2008) (holding same in unsolicited facsimile case).

At this stage of litigation the practice also appears to be oppressive as the term is understood under the ICFA. The recipients of unsolicited faxes have no way of preventing their reception before the fax is received, short of disconnecting their fax machine from the phone line. Nor do they have a remedy at hand after the fax is received. GFP argues that since it includes a removal number

on the faxes, any suggestion of oppressiveness is deflected because there is a mechanism to avoid future unwanted faxes. This is unpersuasive given that the harm to the individual has already occurred. *See Sadowski v. Med1 Online, LLC*, No. 07 C 2973, 2008 WL 2224892 at *7 (N.D. Ill. May 27, 2008) (holding same in unsolicited fax case).

GFP also argues that there is no substantial injury to consumers here because each fax page is inexpensive, costing the consumer only a sheet of paper and some toner or ink. This argument misses the point. As the *Centerline* court observed, "Even very small individual harms can be considered substantial, if they are part of a practice that, in the aggregate, causes substantial losses to the public as a whole." 545 F. Supp. 2d at 780–81 (citing *Hartigan v. Stianos*, 475 N.E.2d 1024, 1029 (Ill. App. Ct. 1985)). In *Stianos*, customers were charged a few extra cents of sales tax. Although this was a minor amount as to any one individual, when considering the aggregate effect on the consuming public it could be substantial. 475 N.E.2d at 1029. The *Stianos* and *Centerline* analysis is apposite here; Rudnick is alleging that GFP not only sent three facsimiles to Rudnick, but also that this was part of a broader practice by GFP. Rudnick has sufficiently established the possibility of substantial injury.

Upon considering these three factors as a whole, GFP's alleged activity may be shown to be an unfair practice as understood under the ICFA.

GFP next argues that even if it has engaged in an unfair practice, the ICFA still does not apply because Rudnick has failed to allege that GFP intended for the faxes to be unfair to Rudnick. Though the word "intent" does not appear in Rudnick's complaint, it is clear that intent is alleged. Rudnick alleges that GFP is responsible for the sending of these faxes, Compl. ¶ 11, that this was done as part of a mass broadcasting of faxes, ¶ 16, and was done in the course of trade and commerce, ¶ 39. Rudnick also alleges that mass broadcasting is significantly cheaper than mass

3

mailings, in part because of the cost-shifting effect of faxes. *Id.* ¶ 40. The ordinary consequence of an intentional action is generally deemed to have been intended. *See Mid Am. Fire v. Smith*, 441 N.E.2d 949, 951 (Ill. App. Ct. 1982). Rudnick has sufficiently pled that GFP intended to engage in the unfair practice described above, and to cause the resulting harm of lost paper and ink/toner to Rudnick.

GFP finally argues that the ICFA does not apply because the alleged fraudulent transaction did not occur primarily and substantially in Illinois, and points to *Avery v. State Farm*, 835 N.E.2d 801 (Ill. 2005) for support. *Avery* does not support the argument GFP is attempting to make. As *Avery* states, "a fraudulent transaction may be said to take place within a state if the circumstances relating to the transaction occur primarily and substantially within that state." *Id.* at 853. The faxes were received by consumers in Illinois, and thus to the extent that there was an unfair practice, it was felt within this state. That the faxes may have originated in another forum is of no consequence, for as the ICFA's name implies, the focus is on the harm to (and location of) the *consumer*.[1] *See Bank One Milwaukee v. Sanchez*, 783 N.E.2d 217, 220 (Ill. App. Ct. 2003) ("There is a clear mandate from the Illinois legislature that the courts of this State utilize the Act to the utmost degree in eradicating all forms of deceptive and unfair business practices and grant appropriate remedies to injured parties.") (quotations omitted).

GFP's motion to dismiss the ICFA claim is denied.

---

[1] GFP separately suggests that Rudnick has failed adequately to allege that GFP actually sent the faxes since Rudnick states only that GFP "is responsible for sending or causing the sending of the faxes." Def. Mem. in Supp. of Mot. to Dismiss 9. Rudnick is alleging that GFP is "responsible," which is taken as true for purposes of this order. This appears to the court to be precisely what Rudnick is required to allege.

## II.     Conversion

Conversion under Illinois law requires: (1) an unauthorized and wrongful assumption of control, dominion, or ownership by defendant over plaintiff's property; (2) plaintiff's right to the property; and (3) plaintiff's right to immediate possession of the property, absolutely and unconditionally. *Gen. Motors Corp. v. Douglass*, 565 N.E.2d 93, 96–97 (Ill. App. Ct. 1990). When the property has been temporarily given to the alleged convertor, then the plaintiff must also demand possession of the property. *Id.* GFP makes two arguments against conversion. First, that GFP never exercised domain or control over Rudnick's property. Second, that the loss to Rudnick was nothing more than a trivial inconvenience or expense that is not cognizable as conversion.

Rudnick sufficiently alleges that it has lost control over paper and ink/toner which it otherwise had a right to possess. That GFP never physically possessed the paper and ink/toner is not material. Under Illinois law and the Restatement (Second) of Torts, conversion can encompass any material alteration in characteristics to a chattel. Restatement (Second) of Torts § 226; *see Loman v. Freeman*, 890 N.E.2d 446, 461 (Ill. 2008). The paper and ink/toner spent on the GFP faxes has been lost and cannot be recovered, and this is the very essence of a conversion claim. *Centerline*, 545 F. Supp. 2d at 782 (quoting *Jensen v. Chi. & W. Ind. R.R. Co.*, 419 N.E.2d 578, 593 (Ill. App. Ct. 1981) ("The essence of conversion is not acquisition by the wrongdoer but a wrongful deprivation of the owner thereof.")).[2]

GFP's claim that the loss here is *de minimis* fares no better. GFP points to Section 222A of the Restatement (Second) Torts for support. Section 222A states that "Conversion is an intentional

---

[2] In a nearly identical case to the one at bar (and to *Centerline*), the court in *Rossario's Fine Jewelry, Inc. v. Paddock Publ'ns, Inc.*, 443 F. Supp. 2d 976 (N.D. Ill. 2006) found that because the defendant did not actually possess the one-page faxes printed on the plaintiff's paper, there could be no conversion. *Id.* at 980. As explained in the text of this order, the court finds the analysis in *Centerline* to be more in keeping with Illinois precedent.

exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Id.* GFP argues that because we are talking only about a few pieces of paper and a little ink, there is no "serious interference." This is a misinterpretation of Section 222A.

GFP's argument is conflating two separate inquiries: first, the degree to which the property at issue (paper and ink/toner) was converted, and second, the value of the property at issue. Section 222A is referring to the *degree* of loss of the use of the chattel, not to the chattel's value. *Id.* (". . . *so seriously interferes with the right of another to control it* that the actor may justly be required to pay the other *the full value of the chattel*." *Id.* (emphasis added). Section 222A does not require that the chattel have some minimal value, but only that a conversion claim requires such complete interference that *full compensation* for the chattel is required. This is made clear in comment c of Section 222A, where the commentators distinguish between trespass to chattels (which permits damages only in the amount of the diminished value to the chattel) and conversion of chattels (which requires full compensation for the chattel converted). GFP cannot argue that the paper and toner used is not completely lost. GFP can argue only that the loss of paper and toner is inconsequential to Rudnick. That is not what Section 222A addresses.

Turning, then, to the presumably minimal cost Rudnick has suffered, this is still a viable claim; Illinois courts permit nominal damages in conversion actions. *See Ind. Hi-Rail Corp. v. Decatur Junction*, 37 F.3d 363, 367 (7th Cir. 1994). Since nominal damages are permitted, the *de minimis* theory has no applicability.[3]

---

[3] The court declines to follow the suggestion in *Rossario's* that the theory of *de minimis non curat lex* can foreclose these actions at a motion to dismiss stage. *See* 443 F. Supp. 2d at 980. GFP's reliance on *Edwards v. Emperor's Garden Rest.*, 130 P.3d 1280, 1287–88 (Nev. 2006), which again focuses on the *de minimis* harm suffered by an individual who received unsolicited fax advertisements and which cited to Section 222A of the Restatement (Second) Torts, is also

6

GFP's motion to dismiss the conversion claim is denied.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED:   January 15, 2009

---

unpersuasive, both because of this court's interpretation of Section 222A, and because Illinois courts permit nominal damages for conversion claims.